# EXHIBIT 1

SPS

**COMMONWEALTH OF VIRGINIA**
**CIRCUIT COURT OF FAIRFAX**
**4110 CHAIN BRIDGE ROAD**
**FAIRFAX, VIRGINIA 22030**
**703-691-7320**
**(Press 3, Press 1)**

Keith Bass vs. Jeffrey H Stein

**CASE NUMBER: CL-2025-0019273**

TO:     **Jeffrey H Stein**
        **4547 Grant Road NW**
        **Washington DC 20016**

### SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.**

Done in the name of the Commonwealth of Virginia, on January 7, 2026.

CHRISTOPHER J. FALCON, CLERK

By: _____
        **Deputy Clerk**

Plaintiff's Attorney:  Robert Jackson Martin IV

**V I R G I N I A :**

E-FILED

12/21/2025 21:06:27

CL-2025-0019273

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

KEITH BASS

Plaintiff,                    )
)
)
)
v.                            )
)
JEFFREY H. STEIN             )          Case No.: _____
)
Serve:                       )
)
Jeffery H. Stein             )
4547 Grant Road NW           )
Washington Dc 20016          )
)
Defendant.                   )
)
)

## COMPLAINT

Plaintiff Keith Bass ("Bass" or "Plaintiff"), by counsel, and in support of this Complaint against Defendant Jeffery H. Stein ("Stein" or "Defendant"), states as follows:

### I.    INTRODUCTION

1.    This action arises from Defendant Jeffrey Stein's publication of a politically-motivated article on spytalk.com that falsely states that Plaintiff Keith Bass—a public servant and Republican—had been "fired" by the Central Intelligence Agency. Stein knew this statement was false, or published it with reckless disregard for its truth or falsity. Rather than verify his allegation through readily available, authoritative sources, Stein relied on unnamed and anonymous sources to advance a predetermined partisan narrative, despite the absence of any factual basis for the claim and despite information available to him confirming that Bass had never been terminated by the CIA. By presenting an unverified accusation as established fact,

1

while deliberately avoiding confirmation and cloaking the allegation in anonymity, Stein acted

with actual malice and defamed Bass, causing substantial reputational and professional harm.

## II.    PARTIES

2.    Plaintiff Keith Bass is a resident of Virginia.

3.    Defendant Jeffery Stein is a resident of Washington, D.C.

## III.    JURISDICTION AND VENUE

4.    Venue is properly laid in this Court pursuant to Section 8.01-262 of the Virginia

Code because the cause of action, in whole or in part, arose in and occurred in Fairfax County;

and there is a close and substantial nexus to Fairfax County.

5.    This Court possesses subject-matter jurisdiction over this matter.

6.    This action arises under Virginia law because Stein's statements were

published to Virginia residents and caused ultimate injury to Bass in Virginia.

7.    This Court has personal jurisdiction over Stein under Virginia's long-arm

statute, Va. Code § 8.01-328.1(A)(1), (A)(3), and (A)(4), as well as the Due Process Clause of

the United States Constitution. The claims in this Complaint arise, in part, from Stein's tortious

conduct which caused injury in Virginia. Exercising jurisdiction over Stein would not offend

traditional notions of fair play and substantial justice because Stein deliberately targeted Bass,

who is a Virginia resident, by making false and defamatory statements about him in Virginia.

8.    The events in which Stein accuses Bass of being "fired" occurred at the Central

Intelligence Agency in Langley, Virginia, and, thus, is of particular importance to Virginians.

The injury resulting from Stein's tortious conduct occurred within Virginia.

9.    Stein injured Bass in the Commonwealth of Virginia by his conduct

outside the Commonwealth. In doing so, Stein was aware that Bass was a resident of Virginia and that the matters discussed on spytalk.com primarily concerned and were of concern to Virginians, given that the conduct discussed and people referenced in this article worked in Virginia. Stein knew that Bass worked in Virginia and, thus, his publications were intended to target and incite a Virginia audience.

10.    Stein's statements, published to persons in Virginia, ultimately resulted in injury to Bass in Virginia. Stein's false and defamatory statements were directed at, received, viewed, and heard by individuals in Virginia. As a result, Bass has experienced irreversible personal and professional damage in Virginia, including reputational harm, a negative impact on advancement opportunities and futures jobs within the federal government in Virginia, irreparable damage to his standing within the defense and national security community in Virginia and surrounding areas, and the loss of friendships with individuals in Virginia.

11.    Upon information and belief, Stein regularly does and/or solicits significant business in Virginia and engages in other persistent courses of conduct, such that he has made minimum contacts with the Commonwealth and has purposefully availed himself of its laws. Specifically, his website, spytalk.com, targets the intelligence community that is largely based in Northern Virginia.

12.    Upon information and belief, a substantial number of readers of spytalk.com are Virginia residents and are targeted by Stein, because Bass is a resident of Virginia and was a central focus of the topic of discussion in the article published on spytalk.com.

13.    Stein purposefully availed himself of Virginia, by reporting on events concerning the Virginia defense and intelligence community. Based on information and belief, Stein also regularly works in Virginia.

3

14.     Accordingly, Stein should have foreseen that he would be forced to answer for his tortious conduct, and resulting injuries to Bass, in a Virginia court.

## IV.    FACTUAL BACKGROUND

15.     Keith Bass is a national security professional whose career has included service with the United States government and work in the intelligence and defense community. Over the course of his career, Bass held positions involving sensitive national security matters and developed expertise in intelligence-related operations and analysis. Following his government service, he continued to work in roles connected to national security and public policy.

16.     Bass's early career began as a naval commander, building foundational leadership experience in medical and operational environments before transitioning to senior civilian roles in national security and healthcare operations.

17.     He served as Director of the Office of Medical Services ("OMS") at the CIA, which included leadership responsibilities over multidisciplinary medical teams providing care for CIA personnel and managing significant operational budgets.

18.     Bass also held the position of Director of the White House Medical Unit in Washington, D.C., where he oversaw 24/7 medical care for the President, Vice President, and their families across multiple administrations.

19.     On June 4, 2023, Bass was appointed Medical Center Director for the West Texas VA Health Care System, overseeing healthcare delivery for tens of thousands of veterans and managing a large healthcare workforce and budget.

20.     In early 2025, Bass was nominated to be Assistant Secretary of Defense for Health Affairs, a senior Department of Defense position responsible for overseeing the military's

4

health systems. However, his nomination remained pending and, ultimately, was withdrawn due to the false statements published by Stein.

## V.    DEFAMATORY STATEMENTS

21.    Stein published his defamatory statements in at least one article on spytalk.com and took particular efforts to target Bass's professional network and personal reputation.

22.    Specifically, on January 12, 2025 in an article on spytalk.com, Stein made numerous statements falsely stating or implying that Bass was "fired" by the Central Intelligence Agency (hereinafter, the "Article"). *See* Exhibit 1.

23.    In fact, the headline of the Article was false, as it declared that "Trump's Pick For Top Pentagon Healthcare Job Was Fired By CIA." *Id.*

24.    Bass was never fired by the CIA.

25.    In fact, as part of the Article on spytalk.com, Stein relied exclusively on anonymous sources, falsely stating that:

a) Bass was "pushed out" of the CIA, thereby directly stating and/or implying that Bass had been fired by the CIA. *Id.*

b) Bass "'was removed' by CIA Director Bill Burns, thereby directly stating and/or implying that Bass had been fired by the CIA. *Id.*

c) Bass "was effectively fired by the CIA in 2021," thereby directly stating and/or implying that Bass had been fired by the CIA. *Id.*

26.    Taken as a whole, the article unmistakably conveys, either directly or through implication, the false and defamatory message that Bass was fired from his position with the Central Intelligence Agency.

27.    All of the statements contained in the Article were of and concerning Bass.

5

28.     These allegations are not only false, but are defamatory *per se.*

29.     Specifically, these statements prejudice Bass in his profession because they falsely accuse him of being fired for "poor management," "fumbling the agency's handling of Havana Syndrome," "poorly run[ning]" OMS, and "offload[ing]" the handling of Havanna Syndrome to his deputies. *Id.*

30.     The defamatory implication is that Bass was fired for incompetence.

31.     Each of the above statements were of and concerning Bass and either directly defamed Bass through the quoted statements or the implication and context in which the quoted statements were made imply that Bass was "fired" and fired for incompetence.

## VI.     ALL OF THE ABOVE DEFAMATORY STATEMENTS OF AND CONCERNING PLAINTIFF ARE FALSE

32.     As a result of the above defamatory statements (*i.e.,* accusations that Bass was fired from the CIA and fired for incompetence), Bass has been questioned by members of his professional network, humiliated in his community, and passed over for prestigious professional positions.

33.     All of these defamatory statements are false. Bass was never fired from the CIA. In fact, when he notified the CIA that he was ready to resign, his superiors requested that he remain in his position to recruit, onboard, provide turnover with his replacement as Director of OMS, and ensure continuity of medical services and the COVID program.

34.     The defamatory statements identified above were of and concerning Bass.

35.     The statements are defamatory *per se* because they prejudice Bass in his profession or trade and impute an unfitness to perform the duties of an office or employment of profit, or a want of integrity in the discharge of the duties of such an office or employment.

36.     Stein acted with actual malice in publishing the false claim that Bass was

6

fired by the Central Intelligence Agency. Rather than verify the allegation through official records, on-the-record sources, or any readily available authoritative channels, Stein relied exclusively on unnamed and anonymous sources to publish his defamatory statements.

37.    Based on information and belief, Stein conducted no meaningful investigation to confirm whether Bass had in fact been terminated, despite the ease with which the truth could have been ascertained and despite the obvious reputational harm such an allegation would cause.

38.    Instead, Stein deliberately avoided confirming information and ignored readily available contrary facts, thereby acting with reckless disregard for the truth and engaging in the purposeful avoidance of facts that would have revealed the falsity of his claim.

39.    Stein's actual malice is further evidenced by his political motive in publishing the article. Stein targeted Bass because of his publicly known Republican affiliation and role in politically sensitive matters, and seized upon unverified anonymous allegations to advance a predetermined partisan narrative. The timing, framing, and selective use of anonymous sources support the fact that Stein published the defamatory accusation not to inform the public, but to advance a political objective. Taken together, these facts establish that Stein published the false statement with knowledge of its falsity or, at a minimum, with reckless disregard for whether it was true or false.

40.    Stein made the defamatory statements to damage Bass's reputation and interfere with his professional and personal relationships throughout his personal and professional communities.

41.    Stein's publication of the defamatory statements damaged Bass's reputation throughout his community, but particularly among members in his professional network.

7

42. Since Stein defamed Bass, Bass has had to respond to inquiries from members of his community that have heard and/or read the defamatory statements.

43. Specifically, Bass was forced to respond to informal and formal inquiries about Stein's false statements when he was nominated to be Assistant Secretary of Defense for Health Affairs.

44. Stein's false statements were also reported on by other media outlets, further damaging Bass's reputation and resulting in additional inquiries.

45. These inquiries were incredibly embarrassing to Bass, tarnished Bass's reputation, and, ultimately, his nomination to be Assistant Secretary of Defense for Health Affairs, which was initially set for a vote on September 18, 2025, was withdrawn prior to the scheduled vote due to Stein's false statements.

46. Bass has incurred costs associated with defending his reputation from Stein's false statements.

## COUNT I
### Defamation

47. Plaintiff incorporates by reference each of the allegations set forth in Paragraphs 1–46 above.

48. As part of the Article on spytalk.com, Stein falsely stated that:

a) "Trump's Pick [Bass] For Top Pentagon Healthcare Job Was Fired By CIA." Exhibit 1.

b) Bass was "pushed out" of the CIA, thereby directly stating and/or implying that Bass had been fired by the CIA. *Id.*

c) Bass "'was removed' by CIA Director Bill Burns, thereby directly stating and/or implying that Bass had been fired by the CIA. *Id.*

8

d) Bass "was effectively fired by the CIA in 2021," thereby directly stating and/or implying that Bass had been fired by the CIA. *Id.*

49. Taken as a whole, the article unmistakably conveys, either directly or through implication, the false and defamatory message that Bass was fired from his position with the Central Intelligence Agency.

50. The article also falsely implies that Bass was fired for incompetence, as it falsely accuses him of being fired for "poor management," "fumbling the agency's handling of Havana Syndrome," "poorly run[ning]" OMS, and "offload[ing]" the handling of Havanna Syndrome to his deputies. *Id.*

51. Stein published the defamatory statements of and concerning Bass via spytalk.com.

52. Stein published the false and defamatory statements of and concerning Bass with actual malice, *i.e.*, knowledge of falsity or reckless disregard for truth or falsity.

53. Specifically, Stein knew these statements were false, as he relied exclusively on anonymous sources, failed to adequately investigate his claims, and sought to advance his partisan agenda.

54. Stein either knew the statements he published concerning Bass were false, or, believing them to be true, lacked reasonable grounds for such belief.

55. The defamatory and false statements set forth in the preceding paragraphs of this Complaint substantially harmed Bass's reputation and standing within his community and professional networks.

56. Stein acted with malice and/or ill-will in defaming Bass, as he began

9

defaming Bass once he learned that Bass was nominated to be Assistant Secretary of Defense for Health Affairs.

57.    Stein published the defamatory statements without confirming the veracity of his claims.

58.    The statements are so harmful to Bass's reputation, that such statements lowered Bass's reputation in his community and professional network, deterred third persons from interacting with him, and, ultimately, cost him the nomination to be Assistant Secretary of Defense for Health Affairs.

59.    As a direct and proximate result of Stein's defamation, Bass suffered actual damages, including, but not limited to, impairment of reputation, diminished standing in the community, humiliation, injury, embarrassment, emotional distress, and mental anguish.

60.    Bass is entitled to presumed damages because the false and defamatory statements made by Stein impute an unfitness to Bass to perform the duties of an office or employment of profit, or a want of integrity in the discharge of the duties of such an office or employment, and prejudice Bass in his profession or trade.

61.    Accordingly, Stein's false and defamatory statements are defamatory *per se*.

62.    Bass seeks punitive damages as redress for Stein's willful and malicious behavior.

**WHEREFORE**, the Plaintiff, Keith Bass, moves this Court for entry of judgment against Defendant Jeffrey H. Stein in the sum of One-Million Dollars ($1,000,000) for compensatory damages, plus prejudgment interest thereon from January 12, 2025, pursuant to Virginia Code § 8.01-382. Plaintiff also moves this Court for the entry of judgment against

Defendant Jeffrey H. Stein in the sum of Three-Hundred-and-Fifty-Thousand Dollars ($350,000)

for punitive damages.

### TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

KEITH BASS
By Counsel

*Jackson Martin*

Lee E. Berlik (VSB No. 39609)
R. Jackson Martin, Of Counsel (VSB No. 80655)
BERLIKLAW, LLC
1818 Library Street
Suite 500
Reston, Virginia 20190
Tel: (703) 722-0588
LBerlik@berliklaw.com
JMartin@berliklaw.com

# EXHIBIT 1

# Trump's Pick for Top Pentagon Healthcare Job Was Fired by CIA

Keith Bass headed CIA's troubled Office of Medical Services, faulted for such poor administration and handling of Havana Syndrome that Congress intervened



**JEFF STEIN**

JAN 12, 2025 · PAID

♡ 143    💬 7    ⟳ 42                                          Share

Keith Bass, President-elect Trump's pick to run the Pentagon's sprawling healthcare systems, was effectively fired by the CIA in 2021 for his poor management of the spy agency's Office of Medical Services.

Case 1:26-cv-00385-PTG-WEF    Document 1-1    Filed 02/09/26    Page 16 of 18 PageID#
20



Keith Bass (West Texas Health Care System photo)

Bass was "pushed out," two authoritative sources told SpyTalk, after fumbling the agency's handling of Havana Syndrome, which the government calls Anomalous Health Incidents, or AHI. One of the sources familiar with Bass's removal, speaking on terms of anonymity to discuss the sensitive issue, said the retired former naval officer "was removed" by CIA Director Bill Burns, "not for misconduct," but because "OMS was

being poorly run, and AHI just flushed it out." Numerous media reports in 2021 said the OMS chief was "pushed out" without identifying Bass by name.

Late last month, the Senate Intelligence Committee released a bipartisan report that blasted the CIA's handling of AHI, the mysterious set of illnesses that have stricken scores of CIA, State Department and other government employees and their dependents, mostly overseas. The first cases were reported by officers stationed in Havana in 2016.

"Many individuals faced obstacles to timely and sufficient care," the report said, among many other missteps. Bass "offloaded" the handling of AHI to his deputies, one of the sources told SpyTalk.

Keep reading with a 7-day free trial

Subscribe to **SpyTalk** to keep reading this post and get 7 days of free access to the full post archives.

**Start trial**

Already a paid subscriber? Sign in

being poorly run, and AHI just flushed it out." Numerous media reports in 2021 said the OMS chief was "pushed out" without identifying Bass by name.

Late last month, the Senate Intelligence Committee released a bipartisan report that blasted the CIA's handling of AHI, the mysterious set of illnesses that have stricken scores of CIA, State Department and other government employees and their dependents, mostly overseas. The first cases were reported by officers stationed in Havana in 2016.

"Many individuals faced obstacles to timely and sufficient care," the report said, among many other missteps. Bass "offloaded" the handling of AHI to his deputies, one of the sources told SpyTalk.

Keep reading with a 7-day free trial

Subscribe to **SpyTalk** to keep reading this post and get 7 days of free access to the full post archives.

Start trial

Already a paid subscriber? Sign in