**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **KEITH BASS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:26-cv-00385-PTG-WEF** |
| | ) | |
| **JEFFREY H. STEIN** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF KEITH BASS'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Keith Bass ("Bass" or "Plaintiff") files his Opposition to Defendant Jeffrey H. Stein's ("Stein" or "Defendant") Motion to Dismiss ("Motion") (ECF 7) and states as follows:

## I. INTRODUCTION.

This Motion presents a straightforward Rule 12(b)(6) question: whether the Complaint plausibly alleges that Defendant published a false statement of fact with actual malice. The allegations in the Complaint plausibly establish that it does. Rather than confront the well-pled allegations in the Complaint, Defendant asks the Court to depart from the governing pleading standard in two respects. First, the memorandum in support of the Motion ("Memorandum") relies extensively on materials outside the pleadings—including a paywalled version of the article not incorporated into the Complaint (ECF 8-1) and additional reports that are neither referenced in nor integral to the Complaint (ECF 8-2, 8-3). Because Plaintiff disputes the authenticity of those materials and his claims are based on the publicly available article attached to the Complaint (ECF 1-1), those documents may not be considered without converting the Motion to one for summary judgment. Second, the Memorandum repeatedly disputes Plaintiff's

factual allegations and advances Defendant's competing version of events. That approach is inconsistent with the requirement that the Court accept well-pled facts as true and draw reasonable inferences in Plaintiff's favor.

The Memorandum also invokes the District of Columbia's Anti-SLAPP Act despite controlling authority holding that its special dismissal provision does not apply in federal court. Defendant's argument that District of Columbia substantive law governs similarly depends on disregarding the Complaint's allegations regarding publication and injury in Virginia—allegations that must be accepted as true at this stage. Ultimately, the Motion turns on a single question: whether the Complaint plausibly alleges actual malice. Rule 8 does not require evidentiary proof of state of mind; it requires factual allegations supporting a reasonable inference of reckless disregard. The Complaint satisfies that standard.

At this stage, the Court evaluates plausibility—not competing evidence or factual disputes. For these reasons, and as set forth more fully below, the Motion to Dismiss should be denied.

## II. STATEMENT OF FACTS.

Plaintiff Keith Bass is a Virginia resident who served in a senior leadership role at the Central Intelligence Agency ("CIA") in Langley, Virginia. Compl. ¶¶ 6–8 (ECF 1-1). During his tenure, he oversaw the Office of Medical Services and was responsible for critical operational and medical continuity functions. *Id.* ¶ 17.

In the article at issue, Defendant Jeffrey H. Stein published a definitive statement that Bass "was fired" by the CIA. *Id.* ¶ 23. Bass's claim is based on the free, publicly accessible version of the article attached to the Complaint, which was disseminated to the general public and republished by third parties. *Id.* ¶¶ 6–10.

Bass alleges that the statement that he was "fired" is false. *Id.* ¶ 24. He was never fired. *Id.* In fact, when Bass notified the CIA that he was prepared to resign, his superiors requested that he remain in his position to recruit and onboard his successor, provide turnover, and ensure continuity of medical services and the agency's COVID response program. *Id.* ¶ 33. He remained at the CIA to facilitate that transition. *Id.*

The Complaint alleges that whether Bass was "fired" was an objectively verifiable fact capable of confirmation through official records, direct inquiry, or other authoritative sources. *Id.* ¶¶ 36–38. Instead of verifying that fact, Stein allegedly relied exclusively on unnamed and anonymous sources and conducted no meaningful investigation despite the ease with which the truth could have been ascertained. *Id.* Bass further alleges that Stein deliberately avoided confirming readily available contrary information and published the accusation as a definitive factual statement. *Id.* ¶ 38. The Complaint alleges that Stein either knew that the accusation that Bass was fired by the CIA was false or acted with reckless disregard for its truth. *Id.* ¶¶ 39, 53–54.

Bass also alleges that the publication was directed at Virginia and caused reputational injury in Virginia. *Id.* ¶¶ 6–10. The events referenced in the article occurred at CIA headquarters in Langley, Virginia, and Bass alleges that the statements were received by and caused harm within Virginia's defense and national security community. *Id.*

The Complaint further alleges that the publication occurred in a politically charged context—Bass's nomination to serve as Assistant Secretary of Defense for Health Affairs—and that Stein advanced a predetermined partisan narrative through his framing and reliance on anonymous sources. *Id.* ¶¶ 39, 56. These allegations form the basis of Bass's claim that Stein published the defamatory statement with actual malice. *Id.* ¶¶ 1, 24, 33, 36–39, 53–57.

## III. APPLICABLE LEGAL STANDARD.

A complaint survives a motion to dismiss when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.,* 684 F.3d 462, 467 (4th Cir. 2012) (explaining that a court in deciding a Rule 12(b)(6) motion to dismiss "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff") (citation omitted).

"[F]ederal pleading standards apply," when "a case has been properly removed to federal court." *Koontz v. Jording*, 2019 U.S. Dist. LEXIS 49776, at *15 n.16 (E.D. Va. Mar. 25, 2019). Under Fed. R. Civ. P. 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, Fed. R. Civ. P. 12(d) dictates that "[w]hen deciding a motion to dismiss under Rule 12(b)(6), courts may not consider 'matters outside the pleadings' without converting the motion to one for summary judgment." *Selective Way Ins. Co. v. Home Depot Prod. Auth., LLC*, 2026 U.S. Dist. LEXIS 15220, at *8 (E.D. Va. Jan. 27, 2026) (quoting Fed. R. Civ. P. 12(d)). "[T]he Fourth Circuit has carved out an exception [to] Rule 12(d), under which courts may consider a document attached to a motion to dismiss that 'was not attached to or expressly incorporated into the complaint' if: (1) 'the document was integral to the complaint'; and (2) 'there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Defense v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is integral to a complaint when the plaintiff's claims are based on the

document. *Goines*, 822 F.3d at 166; *see also Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Mills v. Inova Health Care Servs.*, 2025 U.S. App. LEXIS 298, 2025 WL 40550, at *1 (4th Cir. Jan. 7, 2025). "[W]hen reviewing a Rule 12(b)(6) motion, "[a] document is authentic when not in dispute by the opposing party." *Dumapias v. Haybyrne*, 2020 U.S. Dist. LEXIS 253331, at *15 (E.D. Va. Nov. 2, 2020) (quoting *McGlothian v. Fralin*, 2019 U.S. Dist. LEXIS 37351, at *23 (E.D. Va. Jan. 23, 2019). If a document does not independently satisfy both elements, a court may not consider the extrinsic document without converting the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024).

## IV. DEFENDANT'S RELIANCE ON EXTRINSIC MATERIALS IS IMPROPER UNDER RULE 12(b)(6).

Defendant Stein's Motion is not a Rule 12(b)(6) motion. It is an attempt to litigate facts, weigh credibility, and introduce extrinsic evidence. The Federal Rules do not permit that. Specifically, throughout his Memorandum, Defendant attaches extrinsic exhibits that are neither authentic nor integral to the Complaint, while simultaneously relying on facts that are not pled in the Complaint and disputing the truthfulness of Plaintiff's allegations—conduct that is categorically prohibited under Fed. R. Civ. P. 12(b)(6) and (d).

To be clear, Bass disputes the authenticity of the three exhibits[1] Defendant attaches to his Memorandum, along with all references to those three exhibits throughout Defendant's Memorandum. This dispute, standing alone, is fatal to Defendant's efforts to incorporate Exhibits A–C into his Motion. *See Dumapias*, 2020 U.S. Dist. LEXIS at *15 ("Because the authenticity of those exhibits are in dispute, this Court will not consider them in deciding

[1] Exhibit A (ECF 8-1), Exhibit B (ECF 8-2), and Exhibit C (ECF 8-3).

the Motion to Dismiss."). Additionally, each of the three exhibits that Defendant attaches to his Memorandum are not integral to the Complaint.

First, Exhibit A (ECF 8-1) is outside of the pleadings and is not the article on which Bass's defamation claim is based, as Exhibit A ("Paywalled Article") was locked behind a paywall and not available to the general public, as evidenced by the fact that Defendant had to email his attorneys a complete copy of the Paywalled Article so they could attach it the Memorandum. *See* ECF 8-1. Rather, Bass's claim is based on the free, publicly accessible version of the article that Stein chose to publish and disseminate to the general public ("Public Article"). *See* ECF 1-1. The Public Article (*i.e.*, ECF 1-1) is the version that was read, circulated, and caused reputational harm.[2] Defendant's reliance on a paywalled "complete" version of the article is improper at the motion to dismiss stage. By invoking a different version of the article not incorporated into the Complaint, Defendant asks the Court to consider materials outside the pleadings and to reject Plaintiff's well-pled allegations. Rule 12(b)(6) does not permit that. Moreover, since Bass's claims are not based on the Paywalled Article, it is not integral to the Complaint and, therefore, is not subject to the Fourth Circuit's exception articulated in *Goines*. *Goines*, 822 F.3d at 166.

Second, Exhibit B (ECF 8-2) is a report from the Senate Intelligence Committee and is wholly irrelevant to Bass's allegations. Nowhere in Bass's Complaint does he reference or base

[2] Bass's claims are based on the free, publicly accessible version of the article that was disseminated to the general public and republished by third parties. To the extent Defendant contends that a separate paywalled or subscriber-only version of the article exists, Bass expressly reserves the right to seek and recover all damages proximately caused by any and all versions of the publication, including content distributed behind a paywall, to the extent discovery establishes that such content was published to third parties.

any of his claims on this report. Accordingly, it is not "integral" to the Complaint and should be disregarded. *Id.*

Third, Exhibit C (ECF 8-3) is an incomplete report that attempts to chronicle the timeline of Bass's nomination and confirmation as Assistant Secretary of Defense. Nowhere in Bass's Complaint does he reference or base any of his claims on this report. Accordingly, it is not "integral" to his claims and should be disregarded. *Id.*

Additionally, Defendant heavily quotes from these three extrinsic documents throughout his Memorandum, while ignoring the well-pled allegations in Bass's Complaint. Specifically, the Public Article attached to Bass's Complaint (ECF 1-1) is only eight sentences long, while the Paywalled Article contains an additional two pages of text. *See* Exhibit A (ECF 8-1). It is these additional two pages of text that Defendant improperly relies on throughout his Memorandum. For example, in arguing that Bass failed to adequately plead actual malice, Defendant repeatedly cites language from his Paywalled Article that was not included in the Public Article.[3] Given that the Paywalled Article is outside of the pleadings, it—and all references to it—must be disregarded or it should be converted to a motion for summary judgment. Fed. R. Civ. P. 12(d).

The same is true for the report from the Senate Intelligence Committee (*i.e.*, Exhibit B, ECF 8-2). Specifically, while Defendant sporadically references this report throughout his Memorandum, he also devotes nearly half of a page to quoting and referencing this report, even though it is outside the pleadings. *See* Def.'s Mem. Supp. Mot. Dismiss at 12–13 (ECF 8).

---

[3] *See* Def.'s Mem. Supp. Mot. Dismiss at 10–11 (ECF 8). ("There was definitely dissatisfaction'" with how he was running OMS, but the problems 'pre-dated Bass," one of the sources said . . . "Whatever you think about AHI, the source said . . . 'it was poorly handled.'"); *id. at 11* ("Mr. Stein tracked down Assistant Secretary Bass's then place of employment, called the number listed on the website for a comment, but got a recording stating that the phone was "changed, disconnected or is no longer in service.").

Because the Senate Intelligence Committee is not integral to the Complaint, it may not be considered at this stage. *See* Fed. R. Civ. P. 12(d) (dictating that matters outside of the pleadings must be disregarded, if the motion is not converted to one for summary judgment).

Bass disputes the authenticity of these exhibits, and they are not integral to the Complaint. Each of these defects independently requires this Court to disregard these exhibits—and all references to them—in resolving the Motion.

## V. D.C. PROCEDURAL AND SUBSTANTIVE LAW DO NOT APPLY IN THIS CASE.

Defendant's reliance on the D.C. Anti-SLAPP Act fails as a matter of law. Controlling authority makes clear that the D.C. Anti-SLAPP Act's special dismissal provision does not apply in federal court because it conflicts with Rules 12 and 56. Defendant's procedural argument therefore fails as a matter of law. Nor does District of Columbia substantive law govern this case. The Complaint alleges that the publication was directed to Virginians, received in Virginia, and caused reputational injury in Virginia. Under Virginia's *lex loci delicti* principles, those allegations require application of Virginia law at this stage. Defendant's attempt to invoke D.C. law thus provides no basis for dismissal.

### a. The D.C. Anti-SLAPP Act Does Not Apply in Federal Court.

Courts uniformly hold that the District of Columbia's Anti-SLAPP Act[4] does not apply in federal court, a conclusion this Court has likewise reached. Specifically, in *ABLV Bank, AS v. Ctr. for Advanced Def. Studies Inc.*, 2015 U.S. Dist. LEXIS 181218 (E.D. Va. Apr. 21, 2015), Judge Hilton soundly rejected a defendant's argument that the D.C. Anti-SLAPP Act applied in this Court, holding that:

> [D.C.'s Anti-SLAPP Act] simply creates a heightened pleading standard for certain libel actions, similar to the heightened pleading requirement for fraud or mistake found in Rule

[4] "The D.C. anti-SLAPP Act [] became effective March 31, 2011." *Sherrod v. Breitbart*, 405 U.S. App. D.C. 395, 397, 720 F.3d 932, 934 (2013).

> 9(b) of the Federal Rules of Civil Procedure. Though not dispositive of the issue, the [D.C. Anti-SLAPP] Act is tellingly codified in the section of the D.C. code titled "Judiciary and Judicial Procedure." It would be improper for this Court to recognize a heightened pleading standard found outside the Federal Rules of Civil Procedure. Because the Act is procedural under *Erie*, it is not applicable in federal court.

*Id.* at *7–9.

Since *ABLV Bank*, every court that has considered whether D.C.'s Anti-SLAPP Act is applicable in federal court has reached the same conclusion—it is not applicable in federal court. Notably, three days after Judge Hilton's decision in *ABLV Bank*, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") reached the same conclusion, while providing a more robust analysis and explaining that D.C.'s Anti-SLAPP Act is not applicable in federal court because it directly conflicts with the Federal Rules of Civil Procedure.

Specifically, in *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015), the D.C. Circuit opened its analysis by reiterating the bedrock principle that a "federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Id.* at 1333 (quoting *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 398-99, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) (majority opinion) (citing *Hanna v. Plumer*, 380 U.S. 460, 463-64, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)). Critically, as to the first prong promulgated in *Shady Grove*, the D.C. Circuit found that D.C.'s Anti-SLAPP Act answered the same question as Fed. R. Civ. P. 12 and 56:

> For the category of cases that it covers, the D.C. Anti-SLAPP Act establishes the circumstances under which a court must dismiss a plaintiff's claim before trial — namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits. But Federal Rules of Civil Procedure 12 and 56 "answer the same question" about the circumstances under which a court must dismiss a case before trial. And those Federal Rules answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits.

> That difference matters. Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment. But the D.C. Anti-SLAPP Act nullifies that entitlement in certain cases. Under the D.C. Anti-SLAPP Act, the plaintiff is not able to get to trial just by meeting those Rules 12 and 56 standards. The D.C. Anti-SLAPP Act, in other words, conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial.
>
> ***
>
> In short, unlike the D.C. Anti-SLAPP Act, the Federal Rules do not require a plaintiff to show a likelihood of success on the merits in order to avoid pre-trial dismissal. Under *Shady Grove*, therefore, we may not apply the D.C. Anti-SLAPP Act's special motion to dismiss provision.

*Abbas*, 783 F.3d at 1333-34.

After determining that Rules 12 and 56 answered the same question as the D.C. Anti-SLAPP Act, the D.C. Circuit likewise concluded that Rules 12 and 56 are valid under the Rules Enabling Act. *Id.* at 473 ("We need not take a long time here to explain that Federal Rules 12 and 56 are valid under the Rules Enabling Act."). Accordingly, after engaging in a robust analysis, the D.C. Circuit held that: "[a] federal court exercising diversity jurisdiction therefore must apply Federal Rules 12 and 56 instead of the D.C. Anti-SLAPP Act's special motion to dismiss provision." *Id.* at 474.

*Abbas* has been uniformly applied since it was rendered. *See, e.g. Tah v. Glob. Witness Publ'g, Inc.*, 451 U.S. App. D.C. 248, 256, 991 F.3d 231, 239 (2021) (reiterating holding in *Abbas* and finding that "the district court properly applied *Abbas* to this case," by denying the special motion to dismiss under the D.C. Anti-SLAPP Act); *Akhmetshin v. Browder*, 761 F. Supp. 3d 1, 15-16 (D.D.C. 2024) (denying the special motion to dismiss under the D.C. Anti-SLAPP Act); *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 128 (D.D.C. 2018) (applying *Abbas* and denying defendant's special motion to dismiss under the

D.C. Anti-SLAPP Act). Accordingly, Defendant's Motion should be denied, as the D.C. Anti-SLAPP Act is not applicable in federal court.

**b. Virginia Law Governs Under *Lex Loci Delicti*.**

Defendant's only argument that D.C. law applies requires the Court to ignore the very explicit allegations in the Complaint that Bass was defamed and injured in Virginia—which this Court is not permitted to do at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 676–79. In Virginia, courts apply the rule of *lex loci delicti*, or the place of the wrong, to determine the proper substantive law to apply to a state claim. *See Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 5, 431 S.E.2d 33, 9 Va. Law Rep. 1410 (1993). In actions involving allegedly tortious publications, Virginia courts define the place of the wrongful act as the state where the content at issue was published. *See ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, 2015 U.S. Dist. LEXIS 181218, 2015 WL 12517012, at *1 (E.D. Va. Apr. 21, 2015) ("[F]or libel claims, Virginia looks to where the statement was published."). Under Virginia law, a statement is not considered to be published until it is seen or heard by a third party. *See Food Lion, Inc. v. Melton*, 250 Va. 144, 150-51, 458 S.E.2d 580 (1995) (holding that publication requires a third party to have heard the words spoken); *Meadows v. Northrop Grumman Innovation Sys., Inc.*, 436 F. Supp. 3d 879, 886 (W.D. Va. 2020) (collecting cases for the proposition that, in the context of purportedly defamatory emails, the place of publication is where the email was "opened and read"); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) ("[P]ublication of a defamatory statement requires that it be communicated to a third party 'so as to be heard and understood by such person.'") (quoting *Thalhimer Bros. v. Shaw*, 156 Va. 863, 871, 159 S.E. 87 (1931)). Further, under the Restatement (First) of Conflict of Laws, which sets forth the traditional *lex loci delicti* doctrine, the "place of the wrong" for

purposes of a defamation claim is where the content was received and harm to the plaintiff's reputation occurs. *See* Restatement (First) of Conflict of Laws § 377 note 5, illus. 7.

While the Virginia Supreme Court has not weighed in on this issue, the Court of Appeals for the Second Circuit found that:

> the Virginia Supreme Court would—in the context of online defamatory content published simultaneously in multiple jurisdictions—follow the lead of numerous other courts in *lex loci delicti* jurisdictions and apply the law of the state where a plaintiff incurs the greatest reputational injury, with a presumption that a plaintiff suffers the brunt of the injury in their home state.

*Nunes v. CNN, Inc.*, 31 F.4th 135, 143 (2d Cir. 2022).

Moreover, at the motion to dismiss stage, the Court must take the allegations in the Complaint as true. *See, e.g. Chacko v. Preston*, 2024 U.S. Dist. LEXIS 38816, at *14 (E.D. Va. Mar. 5, 2024) (Giles, J.) ("Here, Plaintiff alleges that the defamation allegedly occurred in Virginia. Therefore, Virginia state law applies to Plaintiff's defamation claim.") (cleaned up).

In his Complaint, Bass repeatedly alleges that the defamation occurred in Virginia and that he suffered reputational injury in Virginia:

- "This action arises under Virginia law because Stein's statements were published to Virginia residents and caused ultimate injury to Bass in Virginia." Compl. ¶ 6 (ECF 1-1).
- "Stein deliberately targeted Bass, who is a Virginia resident, by making false and defamatory statements about him in Virginia." *Id.* ¶ 7.
- "The events in which Stein accuses Bass of being 'fired' occurred at the Central Intelligence Agency in Langley, Virginia, and, thus, is of particular importance to Virginians. The injury resulting from Stein's tortious conduct occurred within Virginia." *Id.* ¶ 8.

- "Stein knew that Bass worked in Virginia and, thus, his publications were intended to target and incite a Virginia audience." *Id.* ¶ 9.
- "Stein's statements, published to persons in Virginia, ultimately resulted in injury to Bass in Virginia. Stein's false and defamatory statements were directed at, received, viewed, and heard by individuals in Virginia." *Id.* ¶ 10.
- "Bass has experienced irreversible personal and professional damage in Virginia, including reputational harm, a negative impact on advancement opportunities and future jobs within the federal government in Virginia, irreparable damage to his standing within the defense and national security community in Virginia and surrounding areas, and the loss of friendships with individuals in Virginia." *Id.*

Accordingly, because Bass alleged that both the publication and reputational injury occurred in Virginia, Virginia law applies.

## VI. THE COMPLAINT PLAUSIBLY ALLEGES ACTUAL MALICE.

In Virginia, the elements of defamation are (1) an actionable statement (2) that was published with (3) the requisite intent. *Tharpe v. Saunders*, 285 Va. 476, 480 (2013). Stein only challenges the third element: whether Bass adequately alleged actual malice. Instead of addressing that question, however, Stein spends nearly four pages citing to his extrinsic exhibits and raising arguments to justify the truth of his defamatory statements—argument that is clearly inappropriate at the motion to dismiss stage. Def.'s Mem. Supp. Mot. Dismiss at 9–13 (ECF 8). Moreover, Stein misreads Bass's allegations related to actual malice, as he summarily categorizes Bass's allegations as relying on unnamed sources in the Public Article. *Id.* at 11 ("The Complaint solely relies on the fact that the sources were not named."). At the motion to dismiss stage, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer*

*Fire Dep't, Inc.*, 684 F.3d at 467. Once the Court confines its review to the allegations in the Complaint, Defendant's remaining argument reduces to a single question: whether Bass plausibly alleges actual malice. He does.

**a. The Actual Malice Standard is Subjective and a Plaintiff Need Only Plead a Plausible Inference of Actual Malice.**

"'Actual malice' is defined under Virginia law to include 'a statement made with knowledge that it was false or with reckless disregard of whether or not it was false.'" *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 741 (E.D. Va. 2014) (quoting *Newspaper Publ'g Corp. v. Burke*, 216 Va. 800, 802, 224 S.E.2d 132, 134 (1976)). "[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) (internal citations omitted). Additionally, "[a]lthough failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Id.* at 692; *see also id.* at 693 ("This evidence of an intent to avoid the truth was not only sufficient to convince the plurality that there had been an extreme departure from professional publishing standards, but it was also sufficient to satisfy the more demanding *New York Times* standard…").

Since "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," plaintiffs are permitted to rely on circumstantial evidence when pleading actual malice. *Herbert v. Lando*, 441 U.S. 153, 170, 99 S. Ct. 1635, 1645 (1979); *Adirim v. United States CIA*, 2026 U.S. Dist. LEXIS 39159, at *19 (E.D. Va. Feb. 25, 2026) (quoting *Gilmore v. Jones*, 370 F. Supp. 3d 630, 671 (W.D. Va. 2019)) (The actual malice "inquiry is necessarily subjective and, thus, 'a plaintiff is entitled to prove the defendant's state

of mind through circumstantial evidence.'") (internal citations omitted); *Spirito v. Peninsula Airport Comm'n*, 350 F.Supp.3d 471, 481 (E.D. Va. 2018) ("[B]ecause actual malice is a subjective inquiry, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence."). At the motion to dismiss stage, a plaintiff need only "plead facts that, if proven, create a 'plausible inference' of actual malice." *Fairfax v. CBS Broad.*, 534 F. Supp. 3d 581, 592 (E.D. Va. 2020) (quoting *Spirito*, 350 F. Supp.3d at 481.

"There are various allegations that could support actual malice. For instance, Plaintiff could allege facts showing that [defendant] published 'a narrative and story line unmoored in the facts.'" *McCullough v. Gannett, Co.*, 2023 U.S. Dist. LEXIS 72291, at *34 (E.D. Va. Apr. 25, 2023) (quoting *Fairfax*, 534 F. Supp. 3d at 592). A plaintiff may also "refer to certain aspects surrounding a challenged statement deemed probative of malice, such as a defendant's failure to adequately investigate or observe journalistic standards; a narrative and story line unmoored in the facts; or other circumstantial evidence that, taken together, evidences that the defendant acted with knowledge of the statement's falsity or that it 'entertained serious doubts as to the truth of [its] publication.'" *Fairfax*, 534 F. Supp. 3d at 592 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 730, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968)). "[F]ederal cases applying Virginia law recognize the cumulation theory to prove actual malice." *Fairfax*, 534 F. Supp. 3d at 595 n.9 (citing *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) (en banc), *cert. denied*, 501 U.S. 1212 (1991); *Gilmore*, 370 F. Supp. 3d at 673 ("Although neither the pursuit of a preconceived narrative nor a failure to observe journalistic standards is alone ultimately enough to establish actual malice, Gilmore's factual allegations, *taken together*, are sufficiently plausible to support an inference that Creighton published statements about him with actual malice.") (emphasis added); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016)

("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact.").

In *Gilmore*, the Western District of Virginia applied the cumulation theory in finding that the plaintiff had adequately alleged actual malice. *Gilmore*, 370 F. Supp. 3d at 671. Specifically, the court reiterated that allegations of failing to investigate, reliance on anonymous sources, or a preconceived storyline standing in isolation would not survive a motion to dismiss, but, when viewed in the aggregate, those allegations support a "plausible inference" that the defendant acted with actual malice and denied the motion to dismiss. *Id.* at 674–75 ("Taken together, these factual allegations [preconceived storyline, lack of investigation, and reliance on anonymous sources] are sufficiently concrete to create a 'plausible inference' that Hoft published his statements with actual malice.").

In another case, which did not apply the cumulation theory, a trial court sitting in the Western District of Virginia illustrated the minimal allegations necessary to plead a plausible inference of actual malice, resulting in the denial of a motion to dismiss. *Auckland v. Gilead Scis., Inc.*, 2025 U.S. Dist. LEXIS 14921, at *13 (W.D. Va. Jan. 28, 2025). In that case, the plaintiff alleged that he was defamed because the defendant told her human resources' department that the plaintiff "want[ed] to rip [her] panties off." *Id.* at *11. In denying defendant's motion to dismiss, the court found that plaintiff's allegations that "he never told [defendant] that he 'want[ed] to rip [her] panties off' *and* that [defendant] knew [plaintiff] had never made such a statement' were sufficient to plead actual malice." *Id. at* *13 (emphasis in original). Specifically, the trial court held that "[t]hese facts sufficiently establish that [defendant] knew her allegation was false when she made it to GSI." *Id.* Accordingly, while mere conclusory allegations are not

sufficient for pleading actual malice, the allegations that are pled must be viewed in the aggregate, taken as true, and evaluated to determine whether they plead a plausible inference of actual malice. *Iqbal*, 556 U.S. at 676–79; *Gilmore*, 370 F. Supp. 3d at 674–75.

**b. The Allegations Support a Plausible Inference of Actual Malice.**

In arguing that "[t]he Complaint solely relies on the fact that the sources were not named," as the foundation of his attack on Bass's claim of actual malice, Defendant ignores—almost entirely—the factual and substantive allegations in the Complaint. Def.'s Mem. Supp. Mot. Dismiss at 11. (ECF 8).[5] In alleging actual malice, Bass pleads the following facts that support the plausible inference of actual malice:

- "Stein knew this statement was false, or published it with reckless disregard for its truth or falsity. Rather than verify his allegation through readily available, authoritative sources, Stein relied on unnamed and anonymous sources to advance a predetermined partisan narrative, despite the absence of any factual basis for the claim and despite information available to him confirming that Bass had never been terminated by the CIA." Compl. ¶ 1 (ECF 1-1).
- "By presenting an unverified accusation as established fact, while deliberately avoiding confirmation and cloaking the allegation in anonymity, Stein acted with actual malice and defamed Bass…" *Id.*
- "Bass was never fired by the CIA." *Id.* ¶ 24.
- "Bass was never fired from the CIA. In fact, when he notified the CIA that he was ready to resign, his superiors requested that he remain in his position to recruit, onboard,

[5] Defendant's remaining arguments largely rely on extrinsic evidence and dispute the truth of Bass's allegations.

provide turnover with his replacement as Director of OMS, and ensure continuity of medical services and the COVID program." *Id.* ¶ 33.

- "Stein acted with actual malice in publishing the false claim that Bass was fired by the Central Intelligence Agency. Rather than verify the allegation through official records, on-the-record sources, or any readily available authoritative channels, Stein relied exclusively on unnamed and anonymous sources to publish his defamatory statements." *Id.* ¶ 36.
- "Based on information and belief, Stein conducted no meaningful investigation to confirm whether Bass had in fact been terminated, despite the ease with which the truth could have been ascertained and despite the obvious reputational harm such an allegation would cause." *Id.* ¶ 37.
- "Stein deliberately avoided confirming information and ignored readily available contrary facts, thereby acting with reckless disregard for the truth and engaging in the purposeful avoidance of facts that would have revealed the falsity of his claim." *Id.* ¶ 38.
- "Stein's actual malice is further evidenced by his political motive in publishing the article. Stein targeted Bass because of his publicly known Republican affiliation and role in politically sensitive matters, and seized upon unverified anonymous allegations to advance a predetermined partisan narrative. The timing, framing, and selective use of anonymous sources support the fact that Stein published the defamatory accusation not to inform the public, but to advance a political objective. Taken together, these facts establish that Stein published the false statement with knowledge of its falsity or, at a minimum, with reckless disregard for whether it was true or false." *Id.* ¶ 39.

- "Stein knew these statements were false, as he relied exclusively on anonymous sources, failed to adequately investigate his claims, and sought to advance his partisan agenda." *Id.* ¶ 53.
- "Stein either knew the statements he published concerning Bass were false, or, believing them to be true, lacked reasonable grounds for such belief." *Id.* ¶ 54.
- "Stein acted with malice and/or ill-will in defaming Bass, as he began defaming Bass once he learned that Bass was nominated to be Assistant Secretary of Defense for Health Affairs." *Id.* ¶ 56.
- "Stein published the defamatory statements without confirming the veracity of his claims." *Id.* ¶ 57.

Stein falsely, or with a reckless disregard for the truth, published that Bass was fired by the CIA. Given the binary nature of this false statement, Stein does not even challenge its actionable nature (*i.e.*, the first element required to state a claim for defamation). Rather, he solely contends that Bass failed to plead actual malice. The factual allegations belie Stein's position.

At the outset, and in the first paragraph of the Complaint, Bass pled that there is no "factual basis" to claim that he was fired. *Id.* ¶ 1. ("despite the absence of any factual basis for the claim and despite information available to him confirming that Bass had never been terminated by the CIA."). Because there was no "factual basis" to claim that Bass was fired, this allegation, standing alone, creates the plausible inference that Stein acted at least recklessly when he claimed that Bass was fired. Additionally, Bass alleges that "when he notified the CIA that he was ready to resign, his superiors requested that he remain in his position to recruit, onboard, provide turnover with his replacement as Director of OMS, and ensure continuity of medical services and the COVID program." *Id.* ¶ 33. This allegation, again, confirms that Bass was not

fired and, therefore, Stein's statements were false. Yet, Stein deliberately ignored this truth and never conducted a "meaningful investigation to confirm whether Bass had in fact been terminated." *Id.* ¶ 37. "Rather than verify the allegation through official records, on-the-record sources, or any readily available authoritative channels, Stein relied exclusively on unnamed and anonymous sources to publish his defamatory statements." *Id.* ¶ 36. Based on these allegations, the plausible inference is that, because: (1) there was no "factual basis" to claim that Bass was fired and (2) Bass was asked to remain in his position to recruit, onboard, and ensure continuity of medical services—facts readily confirmable through direct inquiry—Stein acted at least with reckless disregard by ignoring easily accessible, authoritative sources that directly contradicted his assertion that Bass was "fired" from the CIA. *Id.* ¶¶ 1, 38.

In *Harte-Hanks*, the United States Supreme Court held that actual malice may be established where a defendant purposefully avoids the truth or deliberately fails to pursue obvious sources that would confirm or refute a defamatory allegation. *Harte-Hanks*, 491 U.S. at 692–93. Here, this case does not involve nuanced policy disagreement or subjective interpretation. Rather, whether Bass was "fired" is a binary, objectively verifiable fact. Publicly available government records, official employment materials, and direct inquiry to Bass or the CIA would have readily confirmed that he was not terminated but remained in his position to recruit, onboard, and ensure continuity of operations. By publishing a definitive headline stating that Bass "Was Fired By CIA," while ignoring easily accessible, authoritative sources that contradicted that claim, Stein plausibly engaged in the type of deliberate avoidance that *Harte-Hanks* identifies as evidence of reckless disregard for the truth. At the pleading stage, those allegations more than suffice to support a plausible inference of actual malice.

Moreover, Stein "began defaming Bass once he learned that Bass was nominated to be Assistant Secretary of Defense for Health Affairs." *Id.* ¶ 56. Since Bass is a Republican, this fact evidences Stein's "political motive" in publishing the defamatory statements. *Id.* ¶ 39. As alleged, "Stein targeted Bass because of his publicly known Republican affiliation and role in politically sensitive matters, and seized upon unverified anonymous allegations to advance a predetermined partisan narrative. The timing, framing, and selective use of anonymous sources support the fact that Stein published the defamatory accusation not to inform the public, but to advance a political objective." *Id.*

Taken as a whole, these factual allegations (*i.e.*, "Stein knew these statements were false, as he relied exclusively on anonymous sources, failed to adequately investigate his claims, and sought to advance his partisan agenda." *id.* ¶ 53) are more than enough to satisfy the cumulation theory and find that Bass adequately pled actual malice. Specifically, just like in *Gilmore,* where the court found that the aggregate allegations of a preconceived storyline, lack of investigation, and reliance on anonymous sources was enough to state a plausible inference of actual malice, so should the Court here. *Gilmore*, 370 F. Supp. 3d at 674–75. Additionally, Bass has alleged far more than what was deemed adequate in *Auckland*. Specifically, in *Auckland*, the court found that plaintiff's allegations that "he never told [defendant] that he 'want[ed] to rip [her] panties off' *and* that [defendant] knew [plaintiff] had never made such a statement" were sufficient to plead actual malice." *Id. at* *13. Here, on the other hand, Bass alleges that he was "never fired by the CIA" and that "Stein knew these statements were false, as he relied exclusively on anonymous sources, failed to adequately investigate his claims, and sought to advance his partisan agenda." *Id.* ¶¶ 24, 53. "[T]aken together," these allegations create the plausible inference that Stein "entertained serious doubts as to the truth of his publication." *Fairfax*, 534 F.

Supp. 3d at 592 (quoting *St. Amant*, 390 U.S. at 730). At the motion to dismiss stage, a plaintiff need only plead sufficient facts that, if proven, could create a "plausible inference" of actual malice. *Id.* Accordingly, because Bass has pled such a plausible inference, Defendant's Motion should be denied.

**c. Virginia's Anti-SLAPP Statute Does Not Provide Immunity.**

The immunity provided under Virginia's anti-SLAPP statute (*i.e.*, Va. Code § 8.01-223.2) "shall not apply to any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false." Va. Code § 8.01-223.2(b). In other words, if a plaintiff adequately pleads actual malice, such allegations are enough to overcome a defendant's request for immunity under Va. Code § 8.01-223.2. *Apelbaum v. Bloom*, 2025 U.S. Dist. LEXIS 128631, at *13 (E.D. Va. July 7, 2025) ("Because the Court has already found that Plaintiffs have alleged actual malice, Bloom's Anti-SLAPP argument fails at this juncture."); *Auckland*, 2025 U.S. Dist. LEXIS at *12-13 ("Accordingly, the complaint sufficiently alleges that [defendant] acted with actual malice, which defeats the internal corporate communications privilege and makes Virginia's anti-SLAPP statute inapplicable at this stage of litigation."). However, Virginia's anti-SLAPP statute is not only defeated if actual malice is adequately pled, but it is also rendered ineffective if the defendant "should have known" that such statements were false. Va. Code § 8.01-223.2(b). Here, for all of the reasons stated above, Bass sufficiently pleads actual malice or, at the very least, that Stein "should have known" that his statements were false, thereby defeating Stein's request for immunity and attorney fees under Virginia's anti-SLAPP statute.

## **CONCLUSION**

Because the Complaint plausibly alleges defamation under Virginia law and because Defendant's Motion relies on materials and legal standards that cannot be applied at this stage, the Motion to Dismiss should be denied.[6]

Dated: March 3, 2026

Respectfully Submitted,

KEITH BASS
By Counsel

/s/ Jackson Martin
Lee E. Berlik (VSB No. 39609)
R. Jackson Martin, Of Counsel (VSB No. 80655)
BERLIKLAW, LLC
1818 Library Street
Suite 500
Reston, Virginia 20190
Tel: (703) 722-0588
LBerlik@berliklaw.com
JMartin@berliklaw.com

[6] In the alternative, if any portion of the Motion is granted, which Bass maintains is not warranted, Bass respectfully requests leave to amend to cure any pleading defect identified by the Court and, if any such deficiencies are not likely on their face to be cured with amendment, that the Court allow Bass to file a motion for leave and submit a proposed amended pleading. Fed. R. Civ. P. 15(a); *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) ("we have often described our Fourth Circuit policy as one to liberally allow amendment").

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, March 3, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a true and correct copy of the same to all Counsel of Record.

/s/ Jackson Martin
Robert Jackson Martin